IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **KENNETH HOWARD, et al.,** ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **CIVIL ACTION NO. 07-153-CG-B** |
| ) | |
| **NEW PALACE CASINO, LLC,** ) | |
| ) | |
|     **Defendant.** ) | |

## ORDER

This matter is before the court on defendant, New Palace Casino, LLC's ("New Palace" or "defendant") motions for summary judgment and to strike the affidavit of Jack Sparks ( Docs. 40, 52). For the reasons set forth below, both motions are **GRANTED**.

### JURISDICTION AND VENUE

Plaintiffs Kenneth Howard and Patricia Howard, citizens of the State of Alabama, brought the instant lawsuit in the Circuit Court of Mobile County on January 25, 2007, alleging that Mr. Howard slipped and fell in the defendant's premises and broke his hip. The summons indicates that service was made by certified mail on the same day the case was filed.

28 U.S.C. § 1446(b) provides in relevant part that a "notice of removal of a civil action ... shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." Defendant, a citizen of the State of Mississippi, removed the case on February 27, 2007. Its notice of removal states that the suit was served on January 29, 2007, and

1

that the amount in controversy exceeds $ 75,000.  (Doc. 1, p. 1).  Plaintiffs did not move to remand the case to state court and the material currently before the court indicates that there is complete diversity between the parties and that the amount in controversy exceeds $ 75,000. Subject matter jurisdiction is consequently proper in this court pursuant to 28 U.S.C. § 1332.

Neither party disputes venue or personal jurisdiction.

## SUMMARY JUDGMENT STANDARD

This matter is before the court on the defendant's motion for summary judgment and its related motion to strike the affidavit of one of plaintiffs' experts, Jack W. Sparks ("Sparks"). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  As the Eleventh Circuit succinctly stated:

> A factual dispute is genuine only if "a reasonable jury could return a verdict for the nonmoving party." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (citation omitted).  The moving party bears the burden of proving that no genuine issue of material fact exists.  O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the district court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor.  Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).  Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Info. Sys. and Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224-25 (11th Cir. 2002).  The purpose of summary judgment "is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587,

592 (11th Cir. 1995), cert. denied sub nom. Jones v. Resolution Trust Corp., 516 U.S. 817 (1995).

> In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." Ryan v. Int'l Union of Operating Engrs, Local 675, 794 F.2d 641, 643 (11th Cir. 1986). There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Blue Cross & Blue Shield v. Weitz, 913 F.2d 1544, 1550 (11th Cir. 1990). Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994)(citing Lazzara v. Howard A. Esser, Inc., 802 F.2d 260, 269 (7th Cir. 1986)), cert. denied, 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994).

Id. at 599. The "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The failure by the nonmoving party to make a sufficient showing on an essential element of its action entitles the moving party to judgment as a matter of law. Id.

**FACTS**

Taken in the light most favorable to the plaintiffs, the facts that bear on the resolution of the motion for summary judgment are as follows.

Mr. and Mrs. Howard are married adult residents of Mobile County, Alabama. New Palace is a Mississippi company operating a casino located in Biloxi, Mississippi. On May 21, 2006, the Howards visited the Palace Casino. (Doc. 47-3, pp. 2-3). During their visit to the casino, they ate a meal in the casino's buffet. (Doc. 47-3, p. 5). After they finished eating, Mrs. Howard left the buffet to play the slot machines on the casino floor while Mr. Howard drank a cup of coffee. (Doc. 47-3, pp. 6-7). After Mr. Howard finished his coffee, he attempted to stand up, slipped, and fell. (Doc. 47-3, p. 7-8).

Mr. Howard testified that he slipped on something which caused, or contributed to, his fall, but he could not identify the object on which he slipped. (Doc. 47-3, pp. 7-11). Mrs. Howard was not present when Mr. Howard fell, and she has no first-hand knowledge about what caused her husband to fall. (Doc. 47-4, pp. 2-4). Another customer at the casino buffet, Gary Nelson, witnessed the incident and provided Mrs. Howard with the item on which Mr. Howard possibly slipped. Mrs. Howard later identified the item as a coaster from under one of the chairs in the buffet. (Doc. 47-4, pp. 5-8). Mr. Nelson testified by affidavit that he witnessed Mr. Howard's fall and concluded that Mr. Howard slipped on a glider that apparently detached from the bottom of a chair in the buffet, which Mr. Nelson retrieved and gave to somebody he assumed was Mr. Howard's wife. (Doc. 47-10, p. 2).

Subsequent discovery in the lawsuit revealed that the chairs in the casino buffet have plastic inserts, referred to as "coasters" or "gliders," that fit in the bottom of the chair legs. (Doc. 47-5, pp. 4-5). New Palace keeps spare gliders on hand in order to replace old gliders "because they would wear themselves up to the interior of the chair leg," which would cause the chair to "get a little wobbly, maybe, or not slide well on the carpet." (Doc. 47-8, p. 4). When an old glider is removed, the employee primarily responsible for replacing the old gliders testified that he installs replacement gliders as follows: "you just simply set them in there, give a smack with your hand and they go in." (Doc. 47-8, p. 5).

There is no evidence in the record to show that New Palace or its employees knew that the glider on which Mr. Howard allegedly slipped was loose on the floor below or near Mr. Howard's chair. There is also no evidence in the record to show how long the glider on which Mr. Howard allegedly slipped was present below or near Mr. Howard's chair, although the food

and beverage supervisor at New Palace testified that the casino has a policy of checking to see if anything is wrong with the buffet at closing time. (Doc. 47-5, pp. 3, 9). If any problems are discovered during the nightly, closing-time checks, such as a chair with a loose seat, the problems are resolved, for instance by taking the defective chair off of the floor. (Doc. 47-5, p. 9).

Plaintiffs submitted Sparks' affidavit with their response to the defendant's motion for summary judgment. (Doc. 47-11). The affidavit, which is the subject of defendant's motion to strike, provides Sparks' expert opinion that the gliders are likely to fall out from the chair legs to which they are attached if they are installed by using the "smack" of a hand rather than by using a mallet, hammer, or an adhesive such as glue.

## THE MOTIONS FOR SUMMARY JUDGMENT AND TO STRIKE ARE GRANTED

Plaintiffs' complaint brings three counts. Counts One and Two are brought on behalf of Mr. Howard for negligence and wantonness. Count Three is brought on Mrs. Howard's behalf for loss of consortium.

The defendant's motion seeks summary judgment on all three of plaintiffs' counts. The plaintiffs candidly concede that the court should grant the motion as to Count Two for "wantonness" but argue that they have sufficient facts to overcome the motion on counts one and three. As both parties recognize, Mississippi law applies to this lawsuit because, under Alabama's choice of law rules, "courts of this state 'will determine the substantive rights of an injured party according to the law of the state where the injury occurred.'" Middleton v. Caterpillar Indus., Inc., ___ So. 2d ___, 2007 WL 2343684, at *3, 2007 Ala. LEXIS 170, at *8 (Ala. Aug. 17, 2007) (quoting Fitts v. Minnesota Mining & Mfg. Co., 581 So. 2d 819, 820 (Ala.

1991)).

"Under Mississippi law[,] proof of an injury is not the basis for premises liability, rather negligence of the business owner must be shown. . . . [T]he business operator is not the insurer against all injuries." Almond v. Flying J Gas Co. 957 So. 2d 437, 439 (Miss. Ct. App. 2007). Explained in more detail:

> In Mississippi, an owner, occupant, or person in charge of a premises owes to an invitee or business visitor a duty to exercise ordinary care to keep the premises in a reasonably safe condition or to warn the invitee of dangerous conditions, not readily apparent, which the owner or occupier knows of or should know of in the exercise of reasonable care. When the dangerous condition is traceable to the proprietor's own negligence, no knowledge of its existence need by [sic] shown. However, the owner or occupant is not an insurer against all injuries. Where the presence of the dangerous condition is due to the act of a third party, it must be shown that the defendant had actual or constructive knowledge of its presence.
>
> Simply put, in order for a plaintiff to recover in a slip-and-fall case, he must (1) show that some negligent act of the defendant caused his injury; or (2) show that the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff; or (3) show that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to a defendant, in that the defendant should have known of the dangerous condition.

Anderson v. B. H. Acquisition, Inc., 771 So. 2d 914, 918 (Miss. 2000) (internal quotations and citations omitted).

In this case, the parties do not dispute that Mr. Howard was a business invitee at the defendant's property. As such, the plaintiffs will overcome the motion for summary judgment if they can create a genuine issue of material fact as to one of the three enumerated methods for recovery in a slip-and-fall case.

Plaintiffs have not created a genuine issue of material fact as to the defendant's knowledge of the dangerous condition. There is no evidence whatsoever that the defendant actually knew about the presence of the glider on the floor. There is also insufficient evidence to

6

create a genuine issue of material fact as to the defendant's constructive knowledge of the glider's presence on the floor.

> Constructive knowledge is established where the condition is shown to have existed for such a length of time that the operator, through the exercise of reasonable care, should have known of the [sic] its existence. The court will not indulge presumptions for the deficiencies in plaintiff's evidence as to the length of time the hazard existed, therefore, the plaintiff must produce admissible evidence as to the time period in order to establish the operator's constructive knowledge. The plaintiff must present specific proof as to the relevant actual length of time.

Almond, 957 So. 2d at 439 (citations omitted). See also Waller v. Dixieland Food Stores, Inc., 492 So. 2d 283, 286 (Miss. 1986); Munford, Inc. v. Fleming, 597 So. 2d 1282, 1285 (Miss. 1992); and Dickens v. Wal-Mart Stores, Inc., 841 F. Supp. 768, 771 (S.D. Miss. 1994) (all holding or recognizing that the plaintiff must present evidence to show how long the dangerous condition existed in order to establish the defendant's constructive knowledge of it).

There is nothing in the record that provides any basis to determine how long the glider had been on the floor. Although the food and beverage supervisor at New Palace testified that the defendant's employees check the restaurant for problems at closing time each day, it is just as likely that the glider found its way under the table shortly after the defendant's employees performed their nightly search the night before Mr. Howard fell as it is that the glider found its way under the table shortly before Mr. Howard fell. See Waller, 492 So. 2d at 286.[1]

---

[1] Plaintiffs also argue that, because approximately thirty gliders may have been replaced between 2002 and the May 21, 2006, date of Mr. Howard's fall, the facts show that gliders detached sufficiently frequently that defendant was on constructive notice of a continuous presence of gliders on the buffet floor. (Doc. 46, p. 11). This argument is rejected. With the exception of Sparks' affidavit, all of the evidence in the record shows that gliders were replaced when they wore down into the chair legs, not when they became detached from the chairs. (Doc. 47-8, pp. 4-6). Because Sparks' affidavit is due to be stricken, plaintiffs have not created a genuine issue of material fact on this point.

Plaintiffs' case, therefore, rests on whether they can establish that some negligent act of the defendant caused the injury. They attempt to meet this burden by arguing that Mr. Howard's fall was caused by the defendant's negligent attachment of the gliders to the chairs in the buffet. (Doc. 46, p. 11). Plaintiffs support their claim of negligence with an expert's affidavit from Sparks that they argue shows the defendant's employees negligently installed the gliders into at least some of the chairs in such a way that the gliders were likely to dislocate from the chairs, possibly ending up under a customer's foot. (Doc. 46, pp. 10-11; Doc. 47-11). The substantive content of the affidavit provides as follows:

> VI. I was provided with a chair from the Palace Casino buffet along with a sample of the "gliders which are the subject of this particular case. The "gliders" are made of polyethylene and/or polypropylene plastic, and the chair legs are metal. The "gliders" are inserts which press fit into the bottoms of the chair legs.
>
> VII. I have examined the properties of both the metal chair legs and the polyethylene and/or polypropylene "gliders". These "gliders" are easily removable in the absence of an adhesive or some other design alteration. In fact, I removed "gliders" from the chair with minimal effort with my fingers.
>
> VIII. It is my opinion to a reasonable degree of engineering certainty that a significant percentage of these "gliders" will come out during the ordinary use of these chairs. This opinion is based upon the fact that the polyethylene and/or polypropylene plastic used in the "glider" collapses very easily under loads. I have learned this from my thirty years' experience in business working with plastics and metals. The polyethylene and/or polypropylene plastic's coefficient of friction with respect to the metal chair is low. In layman's terms, this means that the "glider" does not achieve much traction against the inside of the metal chair leg from the press fit. Consequently, the "glider" will gradually deform and collapse under the weight of users constantly sitting in the chair. This results in the "glider's" loss of capacity for remaining attached to the chair leg. It is also my opinion to a reasonable degree of engineering certainty that the percentage of "gliders" that will come out during ordinary use of the chairs will increase if these "gliders" are simply inserted and affixed, as a Palace Casino employee has testified, by being

        struck and/or forced with the palm of a person's hand.  Manually affixing the "gliders" in this manner will not attach them to the chair leg as securely as driving them into the chair leg with a mallet or hammer.

IX.      Further, it is my opinion to a reasonable degree of engineering certainty that the longer these chairs are used without an adhesive or a design alteration to increase the "glider's" bond with the chair leg, and especially when the "gliders" are manually affixed, the more likely it is that they will become separated from the chair.  I have been made aware that the Palace Casino purchased approximately 200 replacement "gliders" in 2002, that these "gliders" have been used as replacements, and that there are now 170 unused replacement "gliders" left out of the original batch.  I find it incredulous that any Palace Casino employee who works in the buffet area would not have seen "gliders" on the floor, given the "gliders'" propensity for separating from the chair legs.

X.      I have reviewed Gary Nelson's affidavit, and I have also been provided with the depositions that have been taken in this case.  After reviewing the depositions and Mr. Nelson's affidavit, it is my opinion to a reasonable degree of engineering certainty that the most likely cause of Kenneth Howard's fall was a "glider" that became separated from a chair leg, which then caused a fall hazard.  It is further my opinion to a reasonable degree of engineering certainty that (1) a significant number of "gliders" had detached themselves from chair legs in the buffet area between 2002 and the date of Mr. Howard's fall on May 21, 2006, and (2) these detached "gliders" posed fall hazards in the buffet area.

(Doc. 47-11, pp. 2-4).

      Defendant argues that Sparks' affidavit should be stricken because it is untimely, which would undercut plaintiffs' factual support for their claim of negligence.

      The court entered a scheduling order on April 19, 2007, requiring the plaintiffs to disclose their expert and expert testimony as required by FED. R. CIV. P. 26(a)(2) by July 16, 2007.  (Doc. 10, p. 2).  The version of Rule 26(a)(2) that applied on April 19, 2007, provided that expert disclosures include written reports containing, among other things, "a complete statement of all opinions to be expressed and the basis and reasons therefor; [and] the data or other information considered by the witness informing the opinions[.]"  The current version of Rule

9

26(a)(2), which became effective on December 1, 2007, contains a similar requirement.

The parties agreed to extend the deadline for the plaintiffs to make certain expert disclosures until August 15, 2007.  (Doc. 55-2, pp. 13-15).  Plaintiff filed a document entitled "Plaintiffs' Expert Designation" on August 15, 2007, identifying Sparks as an expert.  (Doc. 38).  As the document explains:

> It is expected that Mr. Sparks will discuss issues related to the use of chair coasters and the probability of such items to fall off and become hazardous.  Mr. Sparks is still reviewing discovery materials since all discovery is not complete.  Mr. Sparks reserves the right to change, supplement and/ or amend his opinion since none of them will be final until all evidence is made available.

(Doc. 38, p. 1).  Plaintiffs submitted Sparks' initial written report on October 30, 2007, in conjunction with a FED. R. CIV. P. 56(f) motion for an extension of time to respond to defendant's motion for summary judgment, and a slightly revised report with their response to defendant's motion for summary judgment on November 9, 2007.  (Docs. 44-3 and 47-11).

Plaintiffs argue that their expert report, which they submitted over three months after this court's scheduling order required them to do so, and over two months after their informally-extended deadline expired, should not be stricken.  They argue that they did not have the facts they needed to prepare an expert report by August 15, 2007, because fact discovery was ongoing, that the parties agreed to extend the deadline for Sparks' disclosure until fact discovery was complete, and that defendant waived any chance at striking Sparks' tardy affidavit because defendant did not raise the issue in response to plaintiff's FED. R. CIV. P. 56(f) motion.

Plaintiffs' argument that Sparks' affidavit should not be stricken because fact discovery was ongoing is unconvincing.  Sparks' affidavit is based on his experience, his evaluation of the location where Mr. Howard fell, his evaluation of a sample chair and glider, his understanding

that the defendant may have replaced 30 gliders over a period of time, and his review of the affidavit of an eyewitness to the event. There is nothing in the record, in the form of a motion to compel or otherwise, to refute defendant's assertions that Sparks inspected the premises and chairs on July 20, 2007, or that defendant provided plaintiffs with an exemplar chair and glider on July 30, 2007. (Doc. 55, pp. 2-3). Further, although the eyewitness affidavit Sparks references is dated November 8, 2007, the parties knew what the eyewitness would say in his affidavit well before the deadline for Sparks' expert report. The only information that was arguably unavailable to Sparks before his report was due is the information that led to his understanding that the defendant may have replaced 30 gliders over a period of time. This information was not critical to Sparks' expert opinion and does not provide a defense to the motion to strike.

Plaintiffs' argument that the parties agreed to extend the deadline for Sparks' disclosure until fact discovery was complete is also unconvincing. As a preliminary matter, plaintiffs did not disclose Sparks' report until over a month after the court's September 20, 2007, deadline for completion of all discovery. (Doc. 10, p. 1). Secondarily, although it appears that the parties did not complete fact discovery by the September 20, 2007, deadline, the exhibits the parties submitted that bear on the motion to strike do not show a mutual agreement to extend the deadline for Sparks' disclosure as plaintiffs suggest. To the contrary, the extent of the agreement as to Sparks seems to be that Sparks could inspect the premises, which he apparently did on July 20, 2007, before producing his expert report. (Doc. 55-2, pp. 13-15).

Finally, defendant did not waive its ability to move to strike Sparks' affidavit when it did not raise the issue in response to plaintiffs' Rule 56(f) motion for an extension of time to respond

to defendant's motion for summary judgment. Plaintiffs filed their Rule 56(f) motion on October 30, 2007. The Sparks affidavit attached to that motion was dated October 29, 2007. That affidavit, like the one attached to the plaintiffs' response to the motion for summary judgment, was tardy. The court granted the motion for an extension on October 31, 2007; the court ordered the plaintiffs to respond to the motion for summary judgment by November 9, 2007, and ordered the defendant to reply by November 19, 2007. (Doc. 45). Defendant moved for a two day extension to reply on November 16, 2007, which the court granted. (Docs. 48 and 49). On November 21, 2007, defendant replied to plaintiffs' response to the motion for summary judgment and moved, both in its reply and in a separate motion to strike, to strike Sparks' affidavit. (Docs. 50, 51, 52, and 53). Nothing about the foregoing chronology of events indicates that the defendant waived its right to move to strike a tardy expert affidavit.

The motion to strike Sparks' affidavit is **GRANTED**. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1323 (11th Cir. 2003); Corwin v. Walt Disney Co., 475 F.3d 1239, 1252 (11th Cir. 2007); Robinson v. Ford Motor Co., 967 F. Supp. 482, 486-87 (M.D. Ala. 1997); Priori v. Prudential Ins. Co. of America, 92 F. Supp. 2d 1264, 1267 (M.D. Ala. 2000); and Phillips v. American Honda Motor Co., Inc., 438 F. Supp. 2d 1328, 1330-32 (S.D. Ala. 2006).

Without Mr. Sparks' affidavit, the record lacks any evidence tending to show negligence on the part of the defendant.

Because plaintiffs cannot make a prima facie case against the defendant, the motion for summary judgment is also **GRANTED**.

**DONE and ORDERED** this 7th day of February, 2008.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE